IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **TAESHUNNDIA "PATRICE" STEPHENS,** | |
| **Plaintiff,** | |
| **vs.** | **Civil Action No. _____** |
| **RV BEHAVIORAL, LLC,** | |
| **Defendant.** | |

---

## COMPLAINT

---

Plaintiff Taeshunndia "Patrice" Stephens ("Stephens") files this Complaint asserting claims against Defendant RV Behavioral, LLC ("RV") arising under the Fair Labor Standards Act of 1938 (as amended) (29 U.S.C. §201 *et seq.*) ("FLSA"), the Family Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"), the Americans with Disabilities Act (42 U.S.C. §12101, *et seq.*) ("ADA"), the Employee Retirement Security Act of 1974, ("ERISA") 29 U.S.C. §1132(a)(1) as amended by the Consolidated Budget Reconciliation Act of 1985 ("COBRA"), and in support thereof shows this Court as follows:

### INTRODUCTION

1.     This is an employment case asserting violations of federal statutes enacted for the protection of American workers, *i.e.*, the FLSA, the FMLA, the ADA, ERISA and COBRA.

2.     RV employed Stephens as a Human Resources Generalist from July

1

2018 until October 29, 2020 ("the Relevant Time Period").

3.      During the Relevant Time Period RV:

    a.  failed to compensate Stephens at one-and-one-half times her regular hourly rate for overtime hours she worked in excess of forty (40) hours per week, in violation of the FLSA;

    b.  failed to provide Stephens, an employee with a disability, with a reasonable accommodation that would allow her to perform the essential functions of her position, in violation of the ADA;

    c.  failed to afford Stephens a leave protected under FMLA; and

    d.  terminated Stephens' employment because of her disability in violation of the FMLA and ADA; and

    e.  failed to provide Stephens with a timely notice of her right to elect continuation of employee health care benefits in violation of ERISA and COBRA.

4.      Stephens timely filed a Charge of Discrimination alleging the above referenced ADA violations with the Equal Employment Opportunity Commission on December 1, 2020, *i.e.,* less than 180 days from the adverse employment actions at issue sub judice.

5.      The EEOC issued a "Dismissal and Notice of Rights" of such Charge of Discrimination on December 16, 2020.

6.      This Complaint is filed within 90 days of Stephens' receipt of such Dismissal and Notice of Rights.

## PARTIES, JURISDICTION, AND VENUE

7.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 because the FLSA, FMLA, ADA, ERISA and COBRA are federal statutes affecting commerce.

8.      Venue properly lies in the Northern District of Georgia under 28 U.S.C. §1391(b) because a substantial portion of the events giving rise to the claims herein arose in this judicial district.

9.      Stephens is a natural person and resident of the State of Georgia.

10.     RV is a foreign limited liability company organized under the laws of the State of Delaware.

11.     At all times during the Relevant Time Period, RV has been registered to do business in the State of Georgia.

12.     RV is subject to the personal jurisdiction of this Court.

13.     RV may be served with process through its registered agent for service, Registered Agent Solutions, Inc. at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

## FACTUAL ALLEGATIONS

### *Stephens' Employment*

14.     RV employed Stephens as a Human Resources Generalist from July 2018 through October 29, 2020.

15.     Throughout the Relevant Time Period, RV was Stephens' "employer" as that term is defined in the FLSA, 29 U.S.C. 203(d).

16.     Throughout the Relevant Time Period, RV was Stephens' "employer"

3

as that term is defined in the FMLA, 29 U.S.C. §2611 (4).

17.     Throughout the Relevant Time Period, RV was Stephens' "employer" as that term is defined in ERISA, 29 U.S.C. §1002(5).

18.     Throughout the Relevant Time Period, Stephens was a "covered employee" of RV as that term is defined 29 U.S.C. §1167(2).

19.     Throughout the Relevant Time Period, RV maintained a healthcare benefits plan for its employees known as the RV Behavioral Institute, Inc., Group Health Plan ("the Plan").

20.     At all times relevant to this matter the Plan has been an "employee welfare benefit plan" as that term is defined in ERISA, 29 U.S.C. §1002 (1).

21.     At all times relevant to this matter the Plan has been a "group health plan" as that term is defined in ERISA, 29 U.S.C. 1167(1).

22.     At all times relevant to this matter, Stephens has been a "participant" in the in the Plan, as that term is defined in ERISA, 29 U.S.C. §1002 (7).

23.     On the last day of her employment at RV, Stephens was a "covered employee" as that term is defined in ERISA, 29 U.S.C. §1167 (2).

24.     At all times relevant to this matter, RV has been the "administrator" of the Plan as that term is defined in ERISA, 29 U.S.C. §1002 (16)(A).

25.     At all times relevant to this matter, RV has been a "fiduciary" of the Plan within the meaning of 29 U.S.C. §1002 (21)(A).

26.     At all times relevant to this matter, RV has been the "plan sponsor" of the Plan as that term is defined in ERISA, 29 U.S.C. §1002 (16)(B).

*FLSA Violations*

## ENTERPRISE COVERAGE UNDER THE FLSA

27.     Throughout the Relevant Time Period, RV has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, §7(a)(1), 29 U.S.C. §207(a)(1).

28.     Throughout the Relevant Time Period, two or more employees of RV handled materials used by the company for its business purposes including, but not limited to, office furniture, phones, computers, and office supplies.

29.     Throughout 2018, RV employed two or more "employees engaged in commerce" within the meaning of 29 U.S.C. §203(s)(1)(A).

30.     Throughout 2019, RV employed two or more "employees engaged in commerce" within the meaning of 29 U.S.C. §203(s)(1)(A).

31.     Throughout 2020, RV employed two or more "employees engaged in commerce" within the meaning of 29 U.S.C. §203(s)(1)(A).

32.     Throughout 2018, RV had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. §203(s)(1)(A).

33.     Throughout 2019, RV had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. §203(s)(1)(A).

34.     Throughout 2020, RV had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. §203(s)(1)(A).

35.     In 2018, RV had an annual gross volume of sales made or business done of not less than $500,000 exclusive of excise taxes at the retail level that are separately stated.

36.     In 2019, RV had an annual gross volume of sales made or business done of not less than $500,000 exclusive of excise taxes at the retail level that are separately stated.

37.     In 2020, RV had an annual gross volume of sales made or business done of not less than $500,000 exclusive of excise taxes at the retail level that are separately stated.

38.     Throughout the Relevant Time Period, RV had an annual gross volume of sales made or business done of not less than $500,000, exclusive of excise taxes at the retail level that are separately stated, within the meaning of 29 U.S.C. §203(s)(1)(A).

39.     Throughout the Relevant Time Period, RV has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA §3(s)(1), 29 U.S.C. §203(s)(1).

### NON-EXEMPT STATUS

40.     Throughout the Relevant Time Period, Stephens was not exempt from the maximum hour requirements of the FLSA by reason of an exemption set forth in 29 U.S.C. §213.

41.     Throughout the Relevant Time Period, RV failed to employ Stephens in a bona fide executive capacity within the meaning of 29 USC §213 (a).

42.     Throughout the Relevant Time Period, RV failed to employ Stephens in

a bona fide administrative capacity within the meaning of 29 USC §213 (a).

43.     Throughout the Relevant Time Period, RV failed to employ Stephens in a bona fide professional capacity within the meaning of 29 USC §213 (a).

44.     Throughout the Relevant Time Period, RV did not employ Stephens in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC §213 (a).

45.     Throughout the Relevant Time Period, Stephens did not supervise or direct the work of two or more employees of RV.

46.     Throughout the Relevant Time Period, RV did not give Stephens authority to make decisions regarding the hiring or firing of its employees.

47.     Throughout the Relevant Time Period, RV did not afford significant weight to Stephens' recommendations concerning the hiring and firing of its employees.

48.     Stephens' duties as a Human Resources Generalist for RV included, but were not limited to, scheduling orientations, generating offer letters, communicating with applicants after completion of background reviews and drug testing, generating welcome letters, inputting background and drug screen information for new hires, fielding telephone calls, data entry, assisting with State audits for compliance, and performing additional tasks as assigned.

49.     Throughout the Relevant Time Period, Stephens did not have a primary duty that involved the exercise of independent judgment and discretion with regard to matters of significance to RV or its customers.

50.     Throughout the Relevant Time Period, RV compensated Stephens on a

salary basis.

51.     During the period from July 2018 through July 2019, RV compensated Stephens, in part, with an annual salary of approximately $51,410.

52.     During the period from August 2019 through October 29, 2020, RV compensated Stephens, in part, with an annual salary of $53,000.

**Failure to Pay Overtime**

53.     Throughout the Relevant Time Period, Stephens regularly worked for RV five days per week, *i.e.,* Monday through Friday.

54.     From July 2018 through approximately November 2018, Stephens regularly worked for RV between 50 and 60 hours during each work week.

55.     In or about December 2018, RV's Director of Human Resources Marcus Brown resigned.

56.     Beginning in December 2018, RV instructed Stephens to temporarily perform certain additional duties that Brown had previously performed.

57.     Such additional duties included, by were not limited to, coordinating and attending to all facets of the orientation process, coordinating employee evaluations with managers and discussing evaluations with employees, ensuring that new hires completed their training before being sent to a unit, coordinating RV's holiday party in 2018, coordinating meetings with employees for insurance open enrollment, and performing additional duties as assigned.

58.     From approximately December 2018 through approximately January 26, 2019, Stephens regularly worked for RV approximately 90 hours per week.

59.     During all times relevant from approximately January 27, 2019 through

8

February 2020, Stephens regularly worked for RV between 50 and 60 hours during each work week, except for periods in which she was on leave because of her disability.

60.     During all times relevant from approximately March 2020 through October 29, 2020, Stephens regularly worked for RV an average of 50 hours during each work week except for periods in which she was on leave because of her disability.

61.     Throughout the Relevant Time Period, RV was aware of the actual hours that Stephens worked during each work week.

62.     Throughout the Relevant Time Period, RV should have been aware of the actual hours that Stephens worked during each work week

63.     Throughout the Relevant Time Period, RV was aware that Stephens worked in excess of 40 hours during most, if not all, work weeks.

64.     Throughout the Relevant Time Period, RV should have been aware that Stephens worked in excess of 40 hours during most, if not all, work weeks.

65.     Throughout the Relevant Time Period, RV failed to compensate Stephens at one–and–one–half times her regular hourly rate for work performed in excess of forty hours in each work week.

66.     Throughout the Relevant Time Period, RV willfully failed to compensate Stephens at one–and–one–half times her regular hourly rate for work performed in excess of forty hours in each work week.

67.     Throughout the Relevant Time Period RV knew or should have known that the FLSA applied to Stephens.

9

68.     Throughout the Relevant Time Period, RV knew or should have known that FLSA Section 7 required that Defendant compensate Stephens at one and one–half times her regular rate for work performed in excess of forty hours in a workweek.

***FMLA Violation***

69.     RV employed Stephens during the twelve consecutive months immediately prior to October 29, 2020.

70.     Stephens performed more than 1250 hours of work for RV during the twelve consecutive months immediately prior to October 29, 2020.

71.     RV employed 50 or more employees within 75 miles of the worksite at which it employed Stephens during at least 20 workweeks in 2019.

72.     RV employed 50 or more employees within 75 miles of the worksite at which it employed Stephens during at least 20 workweeks in 2020.

73.     Throughout the Relevant Time Period, Stephens suffered from persistent asthma, anxiety, and depression.

74.     These maladies constitute "serious health conditions" as that term is defined in 29 U.S.C. §2611(11).

75.     Throughout the Relevant Time Period, Defendant was aware that Stephens suffered from such serious health conditions.

76.     Throughout the Relevant Time Period, Stephens was under the care of physicians and received treatment for such serious health conditions.

77.     Stephens advised RV that she sought medical treatment for such serious health conditions.

10

78.     Throughout the Relevant Time Period, Stephens' serious health conditions required continuing treatment by a health care provider.

79.     Throughout the Relevant Time Period, RV was aware that Stephens was under the care of a physician for treatment of her serious health conditions.

80.     On or about September 10, 2019, Stephens requested a leave of absence from September 19, 2019 through October 25, 2019 from RV.

81.     Stephens requested such leave of absence for recovery from and treatment of symptoms arising from her serious health conditions.

82.     On or about September 10, 2019, Stephens provided RV with a Certification of Health Care Provider confirming her serious health conditions and certifying the medical necessity of such leave.

83.     RV recognized such leave as a leave under the FMLA.

84.     RV approved Stephens' request for such leave of absence under the FMLA from September 19, 2019 through October 25, 2019.

85.     At all times material hereto, RV was aware of Stephens's serious health conditions.

86.     On or about October 23, 2019, Stephens treating physician directed that she remain out of work until November 13, 2019.

87.     Stephens sought an extension of her medical leave through November 13, 2019.

88.     Stephens provided RV with a doctor's note clearing her to return to work on November 13, 2019.

89.     RV approved Stephens' request for an extension of her FMLA leave through November 13, 2019.

90.     During the year 2019, Stephens utilized a total of 6 weeks for approved FMLA medical leave.

91.     From November 14, 2019 through September 24, 2020, Stephens worked continuously without taking any leave under the FMLA.

92.     On or about August 28, 2020, Stephens requested an FMLA leave due to an exacerbation of her asthma symptoms.

93.     Stephens requested such leave from September 25, 2020 through October 29, 2020.

94.     RV approved Stephens' request for an FMLA leave from September 25, 2020 through October 29, 2020.

95.     On or about October 13, 2020, RV received documentation from Stephens' treating physician certifying the necessity for such leave.

96.     RV provided Stephens with a Designation Notice dated October 19, 2020 as required by the FMLA.

97.     On or about October 19, 2020, RV approved Stephens' request for an FMLA leave for a total of five (5) weeks.

98.     As a result of her continued and persistent asthma and anxiety symptoms, Stephens was unable to return to work for RV on October 29, 2020.

99.     Stephens' treating physician directed her to remain out of work until December 15, 2020.

100.    On or about October 26, 2020, Stephens requested an extension of her

FMLA leave as directed by her treating physician.

101.   On or about October 26, 2020, Stephens requested such extension via an email to RV's Director of Human Resources Delphia Williams.

102.   On October 28, 2020 at 6:46 p.m., Williams advised Stephens by email that she had exhausted her entitlement to FMLA leave.

103.   On October 28, 2020, Delphia Williams advised Stephens that she was henceforth being placed on a part-time "as needed" status.

104.   On October 28, 2020, Delphia Williams advised Stephens that she may reapply for a full-time position with RV once she was medically cleared to return to work.

105.   On or about October 28, 2020, RV denied Stephens' request for an extension of leave her medical leave.

106.   Throughout the Relevant Time Period, RV utilized a "rolling 12-month period" method within the meaning of 29 C.F.R. §825.200 (b)(4) to determine the 12-month period in which the 12 weeks of its employees' FMLA entitlement occurs.

107.   RV failed to notify Stephens that it planned to use an alternate to the 12-month rolling period method sixty days or more prior to October 29, 2020.

108.   On October 29, 2020, Stephens had taken less than 12 weeks of FMLA medical leave during the 12 prior months.

109.   On October 29, 2020, under the rolling 12-month period method, Stephens was eligible for up to six weeks of additional FMLA leave.

110.   RV failed to afford Stephens additional FMLA leave to which she was entitled.

111.   On or about October 29, 2020, RV terminated Stephens' employment.

112.   RV terminated Stephens' employment in retaliation for affording herself the benefits of the FMLA, in violation of the FMLA.

113.   As a direct and foreseeable result of RV's unlawful failure to afford Stephens FMLA leave and its unlawful termination of her employment, Stephens has suffered compensatory damages, including, but not limited to pain and suffering, and the loss of income and health care benefits, in an amount to be proved at trial.

*ADA Violations*

114.   Throughout the Relevant Time Period, Stephens worked at RV's Smyrna, Georgia location.

115.   Throughout the Relevant Time Period, Stephens was a person with a disability within the meaning of the ADA, as amended, 42 U.S.C. §12102(1)(A), (B).

116.   Throughout the Relevant Time Period, Stephens suffered from a mental or physical impairment that substantially limited one or more major life activities.

117.   Throughout the Relevant Time Period, RV regarded Stephens as suffering from a mental or physical impairment that substantially limited one or more major life activities.

118.   On or about July 14, 2020, Stephens' treating physician advised her to work from home because her ongoing underlying health conditions made her vulnerable to serious medical consequences if she were infected with the COVID-19 virus.

119. On or about July 14, 2020, Stephens provided RV with medical certification of her need to be accommodated by allowing her to work from home.

120. Prior to August 10, 2020, Stephens had previously worked remotely from her home on behalf of RV.

121. During most, if not all, workdays from approximately December 2018 through January 21, 2019, Stephens worked remotely from her home on behalf of RV.

122. On or about August 7, 2020, Stephens discussed her ongoing respiratory symptoms with Delphia Williams and requested that she be allowed to work from home.

123. Stephens' request to be permitted to work from home was a request for a reasonable accommodation within the meaning of the ADA.

124. Throughout the Relevant Time Period, Stephens was able and qualified to perform the essential functions of her position with a reasonable accommodation, to wit, working remotely from her home.

125. On or about August 10, 2020, Delphia Williams advised Stephens that RV was "unable" to accommodate Stephens' request for a reasonable accommodation.

126. On August 20, 2020, Delphia Williams advised Stephens that she should consider FMLA leave.

127. On August 20, 2020, Delphia Williams advised Stephens that she should consider FMLA leave in lieu of a reasonable accommodation.

128. RV denied Stephens' request for a reasonable accommodation.

15

129.   RV failed to engage Stephens in a constructive dialog in an attempt to identify a reasonable accommodation that would allow her to perform the essential functions of her position despite her disability.

130.   A reasonable accommodation for Stephens' disability existed, to wit, allowing her to perform work for RV remotely from her home.

131.   Stephens could have performed the essential functions of her position while working remotely from her home.

132.   RV failed to provide a reasonable accommodation that would allow Stephens to perform the essential functions of her position despite her disability.

133.   As a direct and foreseeable result of RV's unlawful failure to enter into a constructive dialog with Stephens concerning a reasonable accommodation and its unlawful failure to provide a reasonable accommodation, Stephens has suffered compensatory damages, including, but not limited to pain and suffering, and the loss of income and health care benefits, in an amount to be proved at trial

***ERISA/COBRA Notice Violation***

134.   At all times during Stephens' employment, RV has employed 20 or more employees.

135.   On October 29, 2020, Stephens was a "covered employee" of RV as that term is defined in 29 U.S.C. §1167(2).

136.   RV terminated Stephens' employment on or about October 29, 2020.

137.   RV's termination of Stephens's employment constitutes a "qualifying event" as that term is defined in 29 U.S.C. §1163.

138.   RV's termination of Stephens' employment was not caused by "gross misconduct" as that term is defined in 29 U.S.C. §1163(2).

139.   RV failed to provide Stephens with written notification of her right to elect to continue to receive healthcare benefits after her termination (*i.e.*, a "COBRA Notice") within 60 days of her termination as required by 29 U.S.C. §1166.

140.   As of the date of filing of this Complaint, RV has failed to provide Stephens with a "COBRA" notice.

141.   Stephens continued to be a Participant under the Plan until approximately October 31, 2020.

142.   Stephens has incurred substantial health care costs since the date of her termination.

143.   Plaintiff has incurred expenses for medical care beyond what she would have incurred had her COBRA post termination insurance coverage been in place.

144.   As the direct and foreseeable result of RV's unlawful failure to provide Stephens with a timely COBRA Notice, Stephens has incurred expenses for medical care greater what she would have incurred had she been afforded the option to elect continued coverage under COBRA.

## CLAIMS FOR RELIEF

### Count One

### Failure to Pay Overtime in Violation of the FLSA

145.   The allegations in paragraphs 27 through 68 above are incorporated by reference as if fully set out in this paragraph.

146.   Throughout the Relevant Time Period, Stephens has been an employee

covered by the FLSA and entitled to the overtime protections set forth in FLSA §7(a), 29 U.S.C. §207(a).

147.   Throughout the Relevant Time Period, Stephens regularly worked in excess of 40 hours each week.

148.   During the Relevant Timer Period, Stephens regularly worked in excess of 40 hours during work weeks when she was not out of work on leave.

149.   RV failed to compensate Stephens at one and one-half times her regular hourly rate for work in excess of 40 hours during each work week, in violation of the FLSA's Maximum Hours provision, FLSA §7(b), 29 U.S.C. §207(b).

150.   RV willfully failed to compensate Stephens at one and one-half times her regular hourly rate for work in excess of 40 hours during each work week in violation of the FLSA's Maximum Hours provision, FLSA §7(b), 29 U.S.C. §207(b).

151.   As the result of RV's unlawful failure to pay overtime, Stephens is entitled to payment of due but unpaid overtime in an amount to be determined at trial, in accordance with FLSA §16(b), 29 U.S.C. §216(b).

152.   As the result of RV's unlawful failure to pay overtime, Stephens is entitled to liquidated damages in accordance with FLSA §16(b), 29 U.S.C. §216(b).

153.   As the result of RV's unlawful failure to pay overtime, Stephens is entitled to her litigation costs and her reasonable attorneys' fees in accordance with FLSA §16(b); 29 U.S.C. §216(b).

## Count Two

## Violation of 29 U.S.C. §2615(a)(1) (FMLA Interference)

154.   The allegations in paragraphs 69 through 113 above are incorporated by reference as if fully set out in this paragraph.

155.   Throughout the Relevant Time Period, Stephens was an eligible employee under the FMLA.

156.   Throughout the Relevant Time Period, RV was Stephens' "employer" within the meaning of the FMLA.

157.   Stephens requested leave from RV and gave notice to RV of her need to take leave to receive treatment for serious health conditions.

158.   Stephens was medically able and willing to return to work before the expiration of 12 weeks of FMLA leave.

159.   RV deprived Stephens of benefits to which she was entitled under the FMLA by terminating her employment before the expiration of her qualifying leave.

160.   RV deprived Stephens of benefits to which she was entitled under the FMLA by failing to extend her FMLA on October 29, 2020.

161.   By terminating Stephens's employment, RV interfered with, restrained, and denied her rights afforded by the FMLA.

162.   By terminating Stephens' employment, RV failed to act in good faith.

163.   As a direct and proximate result of RV's unlawful conduct, Stephens suffered loss of employment, loss of income, and loss of healthcare benefits.

19

164.   Stephens is entitled to recover the wages and employment benefits she has lost as a result of RV's unlawful conduct, and interest thereon, calculated at the prevailing rate.

165.   Stephens is entitled to reinstatement to employment as a result of RV's unlawful conduct.

166.   Stephens is entitled to recover liquidated damages under 29 U.S.C. §2617(a)(1).

167.   Stephens is entitled to recover her costs of litigation, including her reasonable attorney's fees, pursuant to 29 U.S.C. §2617(a)(3).

## Count Three

## Violation of 29 U.S.C. §2615(a)(2) (FMLA Retaliation)

168.   The allegations in paragraphs 69 through 113 above are incorporated by reference as if fully set out in this paragraph.

169.   By taking leave to receive treatment for serious health conditions Stephens engaged in activity that is protected by the FMLA

170.   Stephens suffered an adverse employment action when RV terminated her employment on October 29, 2020.

171.   RV terminated Stephens's employment in retaliation for her use of leave protected by the FMLA.

172.   RV deprived Stephens of benefits to which she was entitled under the FMLA by failing to extend her FMLA on October 29, 2020.

173.   By terminating Stephens's employment, RV interfered with, restrained, and denied her rights afforded by the FMLA.

174.   By terminating Stephens' employment, RV failed to act in good faith.

175.   As a direct and proximate result of RV's unlawful conduct, Stephens suffered loss of employment, loss of income, and loss of healthcare benefits.

176.   Stephens is entitled to recover the wages and employment benefits she has lost as a result of RV's unlawful conduct, and interest thereon, calculated at the prevailing rate.

177.   Stephens is entitled to reinstatement to employment as a result of RV's unlawful conduct.

178.   Stephens is entitled to recover liquidated damages under 29 U.S.C. §2617(a)(1).

179.   Stephens is entitled to recover her costs of litigation, including her reasonable attorney's fees, pursuant to 29 U.S.C. §2617(a)(3).

## Count Four

## Violation of 42 U.S.C. §12112(b)(5)(A) (ADA Failure to Accommodate)

180.   The allegations in paragraphs 114 through 133 above are incorporated by reference as if fully set out in this paragraph.

181.   Throughout the Relevant Time Period, Stephens was an employee of RV within the meaning of 42 U.S.C. §12111(4).

182.   Throughout the Relevant Time Period, RV was an "employer" as that term is defined in 42 U.S.C. §12111(5).

183.   Throughout the Relevant Time Period, Stephens was a qualified individual with a disability as defined in 42 U.S.C. §12111(8).

184.   Stephens engaged in actions protected under the ADAA by requesting reasonable accommodation of her disability.

185.   By failing to afford Stephens a reasonable accommodation RV discriminated against Stephens in violation of the 42 U.S.C. §12112(b)(5)(B), because of her disability and exercise of her rights under the ADA.

186.   By failing to enter into a constructive dialog with Stephens concerning her request for a reasonable accommodation RV discriminated against Stephens in violation of the 42 U.S.C. §12112(b)(5)(B), because of her disability and exercise of her rights under the ADA.

187.   RV violated the ADA willfully or with reckless indifference by refusing to make a reasonable accommodation for Stephens' known or perceived disabilities.

188.   RV violated the ADA willfully or with reckless indifference by refusing to enter into constructive dialog with Stephens concerning her request for a reasonable accommodation.

189.   As the direct and proximate result of RV's unlawful conduct, Stephens has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out-of-pocket expenses, loss of enjoyment, and emotional distress, in an amount to be determined at trial.

190.   As a result of RV's unlawful conduct, Stephens is entitled to declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front

pay, reinstatement, interest, compensatory damages, costs, attorney's fees, and any and all such other relief that may be appropriate.

## Count Five

### Breach of Fiduciary Duty – Failure to Provide a COBRA Notice

191.   The allegations in paragraphs 134 through 144 above are incorporated by reference as if fully set out in this paragraph.

192.   RV terminated Stephens' employment on October 29, 2020.

193.   RV's termination of Stephens' employment constitutes "qualifying event" as that term is defined in 29 U.S.C. §1163.

194.   RV failed to timely provide Stephens with a COBRA Notice as required by 29 U.S.C. §1166.

195.   RV's failure to timely provide Stephens with a COBRA Notice as required by 29 U.S.C. §1166 constitutes a breach of fiduciary duty.

196.   As a result of the acts and omissions constituting the breaches of legal duties as described above, Stephens suffered damages for which Defendants are jointly and severally liable to Stephens.

## Count Six

### Statutory Penalty – Failure to Provide a COBRA Notice

197.   The allegations in paragraphs 134 through 144 above are incorporated by reference as if fully set out in this paragraph.

198.   RV's failure to timely provide Stephens with a COBRA Notice constitutes a breach of their obligations under the COBRA amendments to ERISA.

199.    As a result of the acts and omissions constituting the breaches of

RV's obligations under the COBRA amendments to ERISA as described above,

Stephens suffered damages for which RV is liable.

200.    RV Behavioral is the Administrator of the Plan within the meaning of

29 U.S.C. §1132(c).

201.    RV Behavioral failed to meet the requirements of 29 U.S.C. §1166 by

failing to provide Stephens with information on her COBRA benefits as required

by law.

202.    The failure of RV Behavioral to follow the requirements of 29 U.S.C.

§1166 was not in good faith.

203.    The failure of RV Behavioral to follow the requirements of 29 U.S.C.

§1166 prejudiced the Stephens.

204.    Pursuant to 29 U.S.C. §1132 (c)(1)(B) and 29 CFR 2575.502c-1,

RV is liable to Stephens in the amount as determined by the Court up to $110 per

day from the date of the initial failure to provide Stephens with information pursuant

to 29 U.S.C. §1166 until said information is provided.

WHEREFORE, Plaintiff prays that that this Court:

(a)    Grant a trial by jury as to all matters properly triable to a jury;

(b)    Find that Defendant violated the FLSA by failing to compensate her at one

        and one-half times her regular rate for work performed in excess of forty

hours in a week;

(c)    Award Plaintiff an amount to be determined at trial against Defendant in due but unpaid overtime compensation due under the FLSA;

(d)    Award Plaintiff a like amount in liquidated damages;

(e)    Find that Defendant retaliated against Plaintiff because of Plaintiff's exercise of rights under the FMLA;

(f)    Award Plaintiff all compensation and employment benefits that she lost as a result of Defendant's unlawful conduct including lost pay, vacation, retirement benefits, healthcare benefits, and interest on all applicable amounts calculated at the prevailing rate;

(g)    Award Plaintiff liquidated damages;

(h)    Provide injunctive relief to reinstate Plaintiff's employment;

(i)    Award Plaintiff pre-judgment interest to the extent that liquidated damages are not awarded;

(j)    Award Plaintiff an amount to be proved at trial that will fully and adequately compensate Plaintiff for all past and future medical expenses incurred because of Defendant's commissions and omissions, as alleged above, and all other special damages;

(k)    Award Plaintiff all liquidated damages, civil penalties and all other remedies as may be provided under ERISA, as amended;

(l)    Award Plaintiff up to $110 per day from the date of the initial failure to provide her with information pursuant to 29 U.S.C. §1166;

(m)    Award Plaintiff her costs of litigation, including her reasonable attorneys'

fees from Defendants pursuant to 29 U.S.C. §1132(g);

(n)    Award Plaintiff nominal damages;

(o)    Award Plaintiff her reasonable attorney's fees and costs of litigation; and

(p)    Award any and such other further relief this Court deems just, equitable and proper.


Respectfully submitted,

DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC

*/s/ Kevin D. Fitzpatrick, Jr.*

101 Marietta Street, NW            Kevin D. Fitzpatrick, Jr.
Suite 2650                         Georgia Bar No. 262375
Atlanta, GA 30303                  Charles R. Bridgers
(404) 979-3150 Telephone           Georgia Bar No. 080791
(404) 979-3170 Facsimile
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com      Counsel for Plaintiff

26